Case No. 21-7108, Frederick Douglass Foundation, Inc. et al., Avalanche v. District of Columbia. Ms. Hawley for the Avalanche, Mr. Shefferly for the Avalanche. Good morning, Ms. Hawley. Good morning, Your Honor. May it please the Court, Aaron Morrow Hawley for Frederick Douglass Foundation and Students for Life. Plaintiffs alleged five instances of disparate enforcement during the same summer involving the same law enforcement, the same resource concerns, the same city streets, the same media, and even the same subject of conversation, Black Lives Matter. The difference? One word. Reborn. While the district allowed the former message painted on city streets in permanent paint, it sent six squad cars to arrest two students for planning, for, excuse me, attempting to talk the latter. Your Honor, the district court erred twice. First, the court elided plaintiffs' First and Fifth Amendment claims and held the former to the higher intent standard of the Fifth Amendment. But under this court's decision in Zuckerman and American Freedom Defense Initiative, a pattern of uneven enforcement like the one alleged in the complaint is sufficient to survive a motion to dismiss. Second, the complaint erred by finding, or excuse me, the lower court erred by finding that the complaint failed to plausibly allege a policy under Mondale. In contrast, the complaint alleged that the mayor directed the Metropolitan Police Department to be present at and prevent plaintiffs from chalking their message because of a viewpoint. Three specific allegations inform this and demonstrate plausibility. One, the police gave plaintiffs verbal permission to chalk their message. Two, the plaintiffs sent a letter to the mayor informing her of the date, time, and location of their planned protest, along with their intent to chalk their message, Black Reborn Lives Matter. Three, when plaintiffs arrived on a Saturday morning in August at 6 a.m., there were six squad cars and myriad police officers that arrested plaintiffs when they attempted to chalk based on their viewpoint. This reversal in policy and show of force demonstrates that someone, either the mayor or some other official, with policymaking authority, changed policy and ordered the Metropolitan Police Department to be there. I don't think that it matters, but maybe I'm misremembering your complaint. I thought that they were threatened with arrest, but not actually arrested. Did I misread your complaint? Both, Your Honor. Yes. When the group arrived, they were all threatened with arrest if they did, in fact, chalk their message, despite the fact that the district had allowed similar messages in the past. Two students, if you'll look at pages 62 of the joint appendix, there are two students who were arrested for attempting to chalk that message. If you look, the message is about 16 inches high in chalk, in washable chalk. And on page 61 of the joint appendix, you see one of the messages that the district allowed earlier that summer in June. That message, Defund the Police, spans the city street from sidewalk to sidewalk, spans an entire block, is visible from Google Earth, and remained in place for months. And yet, six block cars arrived to arrest two students for attempting to write Black Pre-Born Lives Matter, again, in letters about 16 to 8 inches high. Ms. Hawley, I think it's important here to be very clear about what the legal standards are under the First and Fifth Amendments, because the case law is perhaps not the clearest. So the organizations that you represent, the brief characterizes the First Amendment claim as an as-applied challenge. But I'm wondering if that's really the right way to talk about this, because an as-applied challenge is where a constitution may be facially constitutional, but the application of it is unconstitutional. I mean, the arrests of these students is not, in itself, unconstitutional. The claim that the organizations really have is a selective enforcement claim under the First Amendment. And so I'm wondering why that's being characterized as an as-applied challenge, which doesn't quite seem to fit. Maybe you can speak to that. Absolutely, Your Honor. So I think it's important to distinguish, as you do, between the First Amendment and the Fifth Amendment. And we believe that there's a First Amendment as-applied viewpoint discrimination claim here. Because of this court held in Mahoney v. Doe, the defacement statute is neutral, content neutral. This court upheld it in Mahoney v. Doe. But as this court said in the American Freedom Defense Initiative, of course, the government can, in fact, discriminate, even if you have a neutral statute. And when that happens, and it's based on viewpoint, a majority of courts of your sister circuits have recognized that that states an as-applied claim for viewpoint discrimination. Is that really the right way to talk about it, though? I mean, I'm just wondering if that's the right label. Like, isn't the right label for that type of claim a claim for selective enforcement about viewpoint discrimination under the First Amendment? That label might be accurate, as long as you're clear that it is a claim under the First Amendment. I mean, I think the case has certainly suggested it is one. I'm just not sure that as-applied is the right way to talk about it. And I think that may actually have consequences for how we think about what the standards are under the First Amendment. So there, I think I disagree with you, Your Honor, if you suggest that the change in the name would change the standards. So a number of courts, if you look at the Second Circuit's decision in Burke in 2021, the Second Circuit said, to be sure, there are some similarities between an as-applied viewpoint discrimination claim, their words, and a selective enforcement claim alleging a violation of the First Amendment. But despite that similarity, the court allowed Hulse to go forward, as did the Fourth Circuit in McGuire, as did the Ninth Circuit in Fody. And the reason that these courts are allowing these claims to go forward is because there is a First Amendment claim. And the claim is that the district here allowed plaintiffs, or allowed protesters, rather, to write on city streets. If you look at the verbal permission that the police officer gave, he noted that the mayor had opened up Pandora's box. And yet it was enforced twice against the plaintiff's students here. So I think it is a First Amendment claim. I think it's as-applied because the statute is contentious. And to your question as to standard, I think that does matter. So the selective enforcement standard, of course, is both that there is an intent to discriminate based on viewpoint. That's what I'm wondering. I mean, I think that the cases may recognize that there is a selective enforcement claim under the First Amendment, which is different from selective enforcement claims under the Fifth Amendment. So, again, that could be a correct interpretation. The cases use the term as-applied viewpoint discrimination. And the reason they do that, I believe, is to make clear that it is a lower intent standard than for selective enforcement under the Fifth Amendment. Because you're not really challenging the validity of the defacement ordinance, which is neutral on its face, and could have been applied both to the organizations here as well as to the other Black Lives Matter protesters, right? You know, in an even-handed manner. And there would be no constitutional problems with the enforcement of this ordinance if it was even-handed. So it seems to me, I just think it's more clarifying to say that there is a selective enforcement challenge under the First Amendment. So I think the problem with that, Your Honor, is that it might suggest that you import the intent standard from those selective enforcement cases. And this court has been clear in Zuckerman as well as the American Freedom of Defense Initiative that a pattern of uneven enforcement is the most relevant evidence of intent. Why would we have to import that Fifth Amendment intent requirement into the selective enforcement claim under the First Amendment? You wouldn't, Your Honor, but I worry that would be confusing. And I suspect that's why these other circuits, the Ninth Circuit, the Fourth Circuit, and these other circuits have called this an as-applied viewpoint discrimination claim. The reason being is that there is a content-neutral statute, and there's disparate enforcement based on that. Isn't what you're challenging, in effect, isn't what the organizations that you represent, they're challenging, in effect, it seems to me, you can tell me if this is incorrect, an unwritten policy of the D.C. government to have selective enforcement of the defacement ordinance. And if that unwritten policy discriminates on the basis of viewpoint, then you wouldn't have to show intent under cases like Reed. I think that could be correct, Your Honor. And I think what we have here is a policy in which the district enforces defacement ordinance against disfavored speech, like plaintiffs, and did not enforce it during the summer of 2020 against favored speech. And so I do think you have a disparate intent, or at least disparate enforcement. And this Court's cases, again, in Zuckerman, as well as Supreme Court's cases in Reed, suggest that that is enough. So also, Your Honors, I think the district court went wrong when looking at the complaint and failing to find a sufficient official policy. There are a number of specific allegations that move the needle from due plausibility on those allegations. First, the complaint alleges that a Metropolitan Police Department informed plaintiffs that they would be allowed to chalk their message, Black Pre-Born Lives Matter, because the mayor had opened up Pandora's Box by allowing others to chalk similar messages. Does it matter to you that the racial justice protesters that you point to neither applied for or had a permit? I don't believe so, Your Honor. The district court considered that and rejected that factor. The reason being is that plaintiffs' attempt to comply with deferring requirements should not subject them to greater enforcement. Indeed, if you look at the Joint Appendix JA-10, you'll see a declaration. And the declaration says that the Metropolitan Police Department enforces violations that it is, quote, aware of. The complaint alleges that the MPD was aware of these violations and yet did nothing. Indeed, many of them remained for months. So I don't think that permitting is distinct. And I'd also like to get to the First Amendment Selective Enforcement versus Fifth Amendment Selective Enforcement on the intent element. As you mentioned earlier about there being a pattern of uneven favoritism, but should there be a higher level of intent given that viewpoint discrimination that even if it's egregious form of content-based discrimination, that there should be a higher level of intent versus just using a pattern? So I think this court's guidance on what the intent standard is would be welcome. It seems like there's a current three-way circuit split. The Seventh Circuit in Chicago-Akron said that there's no intent at all. Evidence of disparate enforcement is enough, and even a pure or innocent motive does not save viewpoint discrimination. In contrast, we have the Fourth Circuit in McGuire and the Tenth Circuit in Pauls that appear to require some sort of direct intent. And then we have a number of other circuits, the Second, the Third, and the Eighth and the Ninth, which appear to follow the Supreme Court's decision in Thomas and say that when you have an unlawful pattern of enforcement, which can be shown, again, by a pattern like the one alleged in the complaint, then that is sufficient to give rise to an inference as well as evidence of intent. So that pattern of uneven enforcement is all that is needed. I think that's what this court's cases in Zuckerman and American Freedom Defense Initiative suggest where this court is at. When you have viewpoint discrimination, take the Zuckerman case. In that case, you had a custom stamp program. The artist submitted a stamp that criticized the Supreme Court's decision in Citizens United. His complaint was quite simple, and it stated that the stamp vendor discriminated by allowing others to espouse views, political views, and not allowing him to do so. And this court said that stated the most basic claim for viewpoint discrimination because within a subset of messages, it singled one out for disdain. That's what the complaint alleges here, and we think that under Thomas, that unlawful favoritism, as well as Zuckerman and American Freedom Defense Initiative, when you have evidence of uneven enforcement, that at least gives rise to an inference at the motion-to-dismiss stage where this case is at. Didn't Zuckerman and the court acknowledge that what it was saying with respect to that was really not necessary to the decision? So it did acknowledge that, Your Honor, but Zuckerman is on all fours with American Freedom Defense Initiative. And what both of those cases, as well as this court's decision in Mahoney v. Babbitt, say is that even though the defacement ordinance is absolutely neutral on its face, the government can, of course, enforce it in ways that are discriminatory. And when it does so based on viewpoint, then all a plaintiff needs to allege to survive a motion-to-dismiss, and I think that's key here. We are at the motion-to-dismiss stage, and plaintiffs have alleged five instances of what the district court called lapses in enforcement in, quote, circumstances that are similar in circumstances and location, highly similar in circumstances and location. And so I think that uneven pattern of enforcement would survive Zuckerman, would survive American Freedom Defense Initiative, as well as Mahoney v. Babbitt. But the district court found that, essentially, that it wasn't really uneven because the circumstances weren't comparable. Is that a fair summary of the district court's ruling? No, Your Honor. With respect, what the district court found was that it was, quote, likely that plaintiffs had alleged enough, again, at the motion-to-dismiss stage, that plaintiffs, as well as the racial justice protesters, were, quote, similarly situated. He looked at both the fact that the plaintiffs sought permits, as well as the fact that maybe they were different in scope, and still concluded that it was likely they had satisfied the similarly situated requirement. That conclusion is clearly correct for a couple of other reasons. First, this is the motion-to-dismiss stage. At that stage, under this court's decision in Banneker, where there are two plausible explanations, one, maybe the resource concerns proposed by the district. On the other hand, maybe the discriminatory viewpoint proposed by plaintiffs. Then that complaint survives a motion-to-dismiss under Banneker. Second, Your Honor, these events took place during the very same summer months. The same police resource concerns applied to both. And yet, plaintiffs were, you know, when they arrived at 6 a.m. on a Saturday morning, six squad cars came up during the summer in which these resource concerns applied. So for all of those reasons, the district court was right to conclude that these plaintiffs are likely similarly situated. And does the subject matter of the speech factor into that analysis? Absolutely, Your Honor. In this case, the subject matter of the speech is precisely the same. The racial justice protesters were writing Black Lives Matter. Plaintiffs here wanted to write Black Freeborn Lives Matter. So same subject, same content, different viewpoint. And under this court's decisions in Mahoney v. Babbitt and Zuckerman and American Freedom Defense Initiative, discrimination based solely on viewpoint is impermissible. And how are you suggesting that the mayor's political preferences were connected, like there was some kind of direction to a particular customer policy, just because the mayor had supported Black Lives Matter? So it's absolutely appropriate for the mayor to support different policies. We have no issue with that. What the complaint suggests, and the district court found to be consistent with evidence of intent, is that the support for Planned Parenthood and the support for Black Lives Matter might be consistent with an intent to discriminate based on viewpoint. I think those consistent allegations, along with the allegations raised in the complaint of uneven enforcement, along with the district's argument below, the district attempted to adopt as its own certain speech in order to promote and share that speech. And I think all of these things working together, again, at the motion to dismiss stage, might show that there is enough intent, if we're taking all inferences in favor of the plaintiffs, to be able to meet the selective enforcement standard. And again, here we're talking about direct intent and selective enforcement. As we discussed, there's a much lower intent requirement with uneven treatment that applies to the First Amendment claim. For liability under Monell, I mean, do the organizations here have to plausibly allege that the city had a policy targeting pro-life speech? Or is it sufficient to show that this, like, to plausibly allege that the city had a policy favoring, you know, the Black Lives Matter speech, you know, by those groups of demonstrators? So I think what's required under Monell is either an official policy made by a policymaker. In this case, the complaint alleges at paragraph 58, or excuse me, 66, either the mayor or another district official who ordered the Metropolitan Police Department to be at the protest and to stop them from shocking their message based on its view. I think the other way to satisfy Monell, which the complaint arguably does as well, is to allege a pattern or practice that is sufficiently widespread to give rise to an inference of that policy. I mean, does it matter if what's selective is the non-enforcement as opposed to the enforcement? Can you say that again? I mean, does it matter, I mean, you know, does it matter, say the city, if the city was enforcing the ordinance against all groups, pro-life groups as well as other groups, but only giving, you know, non-enforcement to the Black Lives Matter group, does that matter? So that's not the complaint. The complaint alleges that there was a policy of disparate enforcement as to plaintiffs' pro-life speech as compared to the non-enforcement during the summer of 2020. I'm not sure that it would matter. I mean, are those two sides of the same coin, or is there a difference? Whether the complaint is about non-enforcement versus like targeted enforcement of a particular kind of viewpoint. I think those are similar points for showing a pattern of practice of uneven enforcement. I think what makes this case unique, and maybe combat some of the claims about, you know, this case opening up Pandora's box, is that this really is a unique case in that plaintiffs identify three instances of non-enforcement. They identify two instances of enforcement, all taking place during the same summer months, same content, same medium. Even the police officer said, you know, you can do it because the mayor's allowed it on the city streets. So these circumstances, they're so clearly similar, and yet you have disparate enforcement. And so I think that certainly survives a motion to dismiss. Thank you. We'll give you some time on the rebuttal. Thank you, Your Honor. Good morning, and may it please the court. I'm Paul Shefferly on behalf of the District of Columbia. The District Court properly dismissed the complaint. Plaintiffs did not vote. Might help. Plaintiffs did not state or predict a constitutional violation because they failed to adequately allege that the district's enforcement of the debasement statute against them was, one, because they were singled out from among others similarly situated, and two, the district had a discriminatory purpose in doing so. But I think the easiest and even easier way to resolve this case is because plaintiffs also failed to allege, adequately allege, a municipal policy and custom that would have caused any predicted constitutional violation. So I would like to turn to that first. A complaint, in order to state a mental health claim, a municipal policy and custom claim, has to identify a particular type of municipal policy or custom on which the plaintiffs are relying. That's what this court explained in blue, that there are four recognized ways that such a policy or custom can be identified. But here, plaintiffs have identified none. They simply make a conclusory allegation that the district had a, quote, policy and practice enforcing the debasement ordinance against each disagrees with, end quote. That sort of conclusory allegation is insufficient. It was insufficient under blue. That alone dooms the plaintiff's complaint. Even if this court were to speculate about what particular theory the plaintiffs are relying upon, and that's not the court's rule, but assuming this court were to assume, for example, that the plaintiff is relying upon a final policymaker theory, the allegations are, once again, simply insufficient. The allegation is that the mayor and or district officials were the individuals who were responsible for the constitution. Do you want to hang your whole argument on and or instead of and? I think the and or is important. It's obviously a deliberate method that the plaintiffs use in pleading their case and not claiming some sort of inadvertent typo or. And what I heard here this morning as well, or some other district official who was a final policymaker. And I think that's because there is no basis to allege that it was the mayor herself who was responsible for the violations. There's no allegation that the mayor was involved in any enforcement decision with respect to the statute. I think it's interesting that D.C. I mean, under I mean, understandably, the focus is on the targeting of the enforcement against these particular groups. But one of the things that's alleged here is that there was a policy of non enforcement against a favored group. And that arguably has been plausibly alleged. So. I mean, isn't that enough under Monell? I mean, a policy of not enforcing against a favored type of speech is arguably a constitutional violation in the same way as targeting an unfavored group of speech. So, you know, your arguments all go to enforcement. What about the you know, the allegations about the selective non enforcement? I disagree. That would be sufficient. First of all, that's not how I think the plaintiff's claim is fairly characterized, the claim that they were targeted. And another thing I'll mention is it still doesn't get them past the policy or custom element of Monell. There's no allegation that the mayor herself made an enforcement decision or non enforcement with respect to any instances. There's there's there are allegations that despite widespread demonstrations with widespread, you know, instances of defacement of property and, you know, paint on the sidewalk and all of this, that there were no there was no enforcement of the defacement ordinance in those circumstances. So there's at least some plausible inference that that might have resulted from a policy of non enforcement favoring that speech. I mean, at the motion to dismiss stage, you know, I recognize the motion to dismiss stage, but I think the court was clear and blue that that is not sufficient, that there is no allegation here of the mayor or this or a specific policymaker. Even assuming that's the theory, we don't even have a theory in this case on the complaint of which particular type of customer policy the line. But even if it was that final policymaker theory, they have not led the mayor herself or specifically identified some other final policymaker who is responsible for any of these decisions. Your Honor, I do want to point out the important policy ramifications of plaintiff's position as well. It's not just plaintiffs who would be able to avoid enforcement of the defacement statute. Anyone would be free. Well, under plaintiff's theory, simply ignore the statute by pointing to the very same instances of non enforcement that the plaintiffs are relying on. Anyone could say the statute was enforced against them. Wait, look, it was enforced against me, but it wasn't enforced in these same instances. And therefore, it's because the district disagreed with my speech. And if that plausibly stated a claim, that would have enormous implications. It would. And I would say it's not just the defacement statute. Well, this argument would apply to any statute where any individual point to instances of non enforcement and say it must have been because of my speech in the course of the encounter with police. Those may be reasons that they don't, you know, succeed ultimately in their claim. But I'm not sure that those are reasons why they don't survive the motion to dismiss stage. And I think this is something that the Supreme Court itself has recognized. Most recently in the needs that there is a real important value in not subjecting officers, law enforcement suits, even if the argument would be, well, can be resolved at the summary judgment stage. The court has emphasized the need for sort of a subjective test. The court has also said in many different cases that viewpoint discrimination is, you know, highly pernicious and, you know, a severe constraint on people's individual liberties. You know, where the executive is enforcing laws in a selective manner that discriminates on the basis of viewpoint. This is a this is a serious constitutional problem. I do recognize that. And of course, the question is, does this adequately state the claim? I would say it doesn't get past the Monell stage because those allegations. But even if we were to get some more directly, the allegations of a constitutional violation, those allegations do fail as well. One, because plaintiff is not plaintiff, not at the first element of showing that they were similarly situated to others. There are two key on the Monell issue. The complaint alleges that they wrote a letter to the mayor with their request of what they wanted to be able to paint or chalk, whatever. Right. And the letter was also copied to the chief of police. And their complaint also alleges that they submitted a permit application and that permit application was granted for their rally, but said that you can't, you know. Talk or paint any message. Right. The complaint alleges those things. And why is it a fair inference that someone at the policy level was a person who addressed and adjudicated their permit application? So that combined with them putting the mayor on notice, the mayor taking interest in what messages are going to be painted on the street by actually commissioning the Black Lives Matter mural. Why isn't that enough to at least possibly allege that the mayor or some other policymaker at a sufficient high level are involved in these decisions? First, I would say it's not enough to say there may have been some other final policymaker besides the mayor. They don't identify anyone. That would be their burden, even at the motion to dismiss stage. As far as the mayor herself, simply the fact that the plaintiff sent a letter to the mayor, that's not sufficient or plausible to infer that she actually read the letter. As a matter, are you saying that the mayor is the only policymaker mayor and the chief of police? I'm just trying to understand what your intention is there. I think as a general matter, as an abstract matter, only the mayor, perhaps the chief of police, in certain circumstances, depending on the circumstances, would be a final policymaker. I think more importantly, it's the plaintiff's burden, even at the complaint stage, to identify who the final policymaker is. Then you need some plausible allegation that that final policymaker was the one responsible for the action, simply because the letter was sent to the mayor. I don't think it's plausible to infer that the mayor even read it, let alone that she made any enforcement decision with respect to anything, let alone that that was discriminatory. That this would not be plausible allegations. There's allegations of discrimination, purely conclusory, simply because the mayor has certain policy views. It's the only thing that seems to approach a factual allegation with respect to the mayor. Maybe my recollection is inaccurate, but in some of the litigation arising out of the protests in the early 2000s at IMF and World Bank and all of that, surrounding mass arrests and things of that nature, didn't this court find police officials lower than the chief to be policymakers sufficient to hold the city liable, or am I not remembering those cases correctly? I'm familiar with the cases. I have not looked at them recently, so I would want to double check. I can't really stand in here and say anyone below the chief of police would be, but... I take your point. Right, and really, this is a matter of pleading deficiency. Even if one could argue that someone else is the final policymaker other than the mayor, the plaintiffs have not plausibly alleged that in this case whatsoever. There are countless district officials. Virtually none of them are final policymakers. It is simply alleged that a district official is responsible. It does not suffice for menial purposes. And the question of a final policymaker is a question of law for the court to decide. And so a legal conclusion that someone is a final policymaker, even if that exists in this case, would not be sufficient. Do you have a view on the element of intent with respect to the First Amendment? Yes, Your Honor. We do believe it is properly characterized as a Fifth Amendment equal protection claim. But even if it were to be some sort of First Amendment claim, the standard would be the same. The requirement of intent would be the same. How are you defining intent? What's necessary to prove it? I think there are two elements. The first requiring that others similarly situated, the statute was not enforced against them. And then in addition to that, evidence of discriminatory purpose. And plaintiffs have nowhere come near showing either one of those. I briefly mentioned why the similarly situated element was not established, because it is distinct in two fundamental ways. The nature, the size and duration of the protest that the plaintiffs are comparing themselves to, and the lack of advance notice. And in addition, the allegations of discriminatory intent are once again purely conclusory. There is no factual allegation that would support it. I'm asking about under the First Amendment as well, the element of intent. Yes, sir. I know you're saying that it should be Fifth Amendment, but I'm also asking about it because the district courts seem to have conflated the two claims. And so I want to know what your view would be on First Amendment elective enforcement element of intent. What I meant to say is I think it would be the same standard, whether you use the Fifth Amendment or the First Amendment, it would be the same standard. And that's because there is probable cause in these types of cases. That is ample legal justification for the action that is taken. And so the plaintiff has to come forward with some particularly strong evidence in order to overcome that. And that does require proof, one, that other individuals similarly situated, the statute was not enforced against. And two, in addition to that, actual factual allegations of discriminatory intent. What cases can you point to that suggest that you have to have intent in a First Amendment selective enforcement claim? So if, you know, taking the plaintiff's allegations in their complaint that the District of Columbia has, you know, essentially some kind of unwritten policy of viewpoint discrimination in terms of how they enforce the defacement ordinance. I mean, if that is true, then they don't have to show more intent after that. I mean, if there's a viewpoint discriminatory, there's a statute that discriminates on the basis of viewpoint. You don't have to show intent. So if the executive has a policy in enforcing a law that is that discriminates on the basis of viewpoint, why would you need to show intent? I mean, the viewpoint discrimination itself is the First Amendment. I take your point. If there is an actual policy and it is itself a discriminatory policy with discriminatory intent. Oh, those are their allegations. Well, I was going to say, I disagree that those are the allegations, respectfully, Your Honor. That's not the First Amendment theory that was put forward in this case at any point, even if it were. Again, I'm going back to my point about the efficiency of the allegations with respect to any policy or custom. There's no even I don't want to repeat myself. But why would why would intent be a part of assuming that is the claim? Just take, you know, that that if they are alleging that there is a viewpoint that the executive is enforcing in a viewpoint discriminatory manner. Why would they also have to show intent in such a selective enforcement claim under the First Amendment? I mean, in the ordinary case, one would because in order to establish a constitutional violation of the First Amendment. Yes, not under the Equal Protection Clause. I'm sorry, maybe I'm misunderstanding, but under under either one. Yes, the. My understanding of Judge Rao's question is this question that I also have, which is, I mean, similarly situated is is part of the protection jurisprudence. Why is that necessarily a part of First Amendment? I would point this court to the Yates versus Bartlett decision recently, and in that case, the court said with respect to a First Amendment retaliatory arrest. How to show lack of probable cause, there's probable cause loop. Now, it did have a narrow qualification on that, and that is in a very narrow qualification that if there were some sort of objective evidence that others similarly support. It's situated. The law had not been enforced that violations of the law or endemic that there was a particularly vocal protester who it happened to be a force against the jaywalking example from that decision. So I think I would point to so even even in a First Amendment context, you have to show in order to overcome the existence of probable cause of discriminatory effect. You know, through showing reliance on similarly situated individuals against whom the statute was not enforced. And in addition, that that differential effect was the product. You're saying that that the District of Columbia can selectively enforce a statute in a viewpoint, discriminatory manner if they have probable cause. Now you're to to arrest someone. I'm not I'm not sure I'm following. It's just a matter of what the plaintiff has to allege and also prove in order to establish the plan. I'm just saying it's a high standard given the system. So you're saying that let's suppose that the complaint alleged that. That. The mayor during these protests. A hundred people. You know, messages and graffiti. And. 50 of them were arrested. And. And of those of 49 that were arrested, they they had pro Black Lives Matter messages. And we were the only ones that had her life or Black Lives Matter message that were arrested. And the mayor said right before we are arrested, you know, arrest those people because I don't like their message. And all of that is alleged in the complaint. You're saying that that complaint. Would be deficient because there were still at least 49 other people who were arrested with probable cause because they had. They were defacing the property as well. No, Your Honor. And that's because I think if I understand the hypothetical, there's direct evidence of discriminatory intent. And that's sort of that's a carve out. We'll acknowledge there's no direct evidence alleged in this case. And so we're in the ordinary case. We're not in the extraordinary case. The ordinary mind. Direct evidence. You don't need to prove any sort of a pattern or or that you're treating differently and similarly situated. I think. What if there were 100 defacements and they were all arrested? But the only thing that was different about these plaintiffs were that the mayor said, make sure you definitely arrest them because they've got the message that I don't want. And that's the allegation. Yeah. So so you have direct evidence, but everybody got arrested. So would there still be a violation? For the first? No. That's an interesting question. I think it might fail at the causation level, but even if there was discriminatory intent in the abstract, it didn't cause a constitutional violation. So it may fail at the causation level. I haven't I haven't fully thought about that. But I will acknowledge that where there is direct evidence, where there's an admission by, say, the mayor ordering an arrest in order to retaliate against someone's speech, that that's a different category of case. And so I'm not I'm not here to argue that the plaintiff would have to show that they're similarly situated in the minor cases as this is. That would be a requirement in addition to showing discriminatory and slaying that. You know. All right, thank you. Miss Polly, I believe that you were out of time, but we'll give you three minutes for rebuttal. Thank you. Thank you, Your Honor. First, I would like to address the opposing counsel's claim. This case fell under my now under this court's decision in Baker and blue. That is not the case. What Baker requires is that I'm quoting here that if a complaint alleging municipal liability under Section eight, 1983, maybe read in a way that supports a claim for relief, thereby giving the defendant fair notice that the claim that is sufficient. Your Honor, with respect, this claim, these allegations in the claim clearly alleged that the mayor required the Metropolitan Police Department to be there on Saturday morning at six a.m. with the purpose of preventing plaintiffs from expressing their message based on. There are a number of allegations in the complaint that make that allegation possible. Again, there's the verbal commission from the police officer. There's the letter that you reference that was simple for the mayor and the chief of police. And then we have a change in policy undoubtedly made by someone with those inferences all suggest that the mayor required the Metropolitan Police Department to be there and to stop talking as alleged in the complaint. And that satisfies Manel. Also, Your Honors, I think that sort of verbiage or nomenclature aside, I agree with Judge Rao that one way that you can look at this is a viewpoint discrimination claim. And her contention that read suggests that no intent is required. Just viewpoint discrimination is consistent with Judge Posner's opinion in Chicago Acorn. In that case, the court found that the motive was completely innocent. The sort of fair organizers there, it was a dog station and that rented out space. And in renting out space, they had sought to attract larger crowds to help the local businesses. So there was no motive based on political viewpoint. But the court found that innocent motive did not matter. That could certainly be the case for viewpoint discrimination claims under read. In all events, this court should take the opportunity to clarify that. As we have the fourth and the tenth circuit that do suggest some sort of intent is required. In any event, at the motion to dismiss stage, all the circuits, including the fourth and the tenth, which find that an unlawful pattern of favoritism is enough. That is alleged in the complaint. In addition, Your Honor, if I may conclude. Thank you, sir. I think that this case is unique in that it alleges both widespread unenforcement of the debasement statute in 2020, as well as two specific instances of enforcement against plaintiffs. At the motion to dismiss stage, this certainly is a plausible inference under Section 1983 of disparate enforcement under both the First Amendment and the Fifth Amendment. Thank you. Thank you. We'll take the matter under advice.
judges: Wilkins, Rao, Childs